UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/17/18

TIMOTHY THOMAS,

                       Plaintiff,

    -against-

TOWN OF SOUTHEAST, TONY HAY, and
MICHAEL BRUEN,

                      Defendants.

15 Civ. 8978 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Timothy Thomas ("Plaintiff") initiated this action on November 16, 2015 by filing

a federal complaint, which he thereafter amended on February 25, 2016 (the "Am. Compl."),

against Defendants the Town of Southeast (the "Town"), Tony Hay, and Michael Bruen

(collectively, "Defendants"). The Amended Complaint asserts various causes of action, including

retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the

"ADEA"), pursuant to 42 U.S.C. § 1983, violations of his Fifth and Fourteenth Amendment rights

to equal protection and procedural and substantive due process, malicious prosecution in violation

of the Fourth Amendment, and retaliation in violation of the First Amendment, as well as several

pendent state law claims. Presently before the Court is the Defendants' motion for summary

judgment pursuant to Federal Rule of Civil Procedure 56 (the "Defendants' Motion"). For the

following reasons, Defendants' Motion is GRANTED.

## FACTUAL BACKGROUND

The following facts are taken from the Amended Complaint, Defendant's Rule 56.1

Statement of Undisputed Material Facts ("Def. 56.1") (ECF No. 36), Plaintiff's Rule 56.1

Statement of Undisputed Material Facts ("Plf. Resp.") (ECF No. 40), Defendant's Counter Response to Plaintiff's 56.1 Statement ("Def. Cntr.") (ECF No. 44), and are uncontested except where indicated.

Plaintiff was employed as a Road Maintenance Equipment Operator ("RMEO") in the Town's Highway Department for over eleven years. (*See* Plf. Resp. ¶¶2, 3.) As an RMEO, Plaintiff was required to perform inspections on the equipment and vehicles he operated prior to their use. (*Id.* ¶25; Declaration of James A. Randazzo in Support of Defendants' Motion ("Randazzo Decl.") (ECF No. 38), Ex. C at 50-54; Ex. F at 76-78.) After performing such inspections, Plaintiff and other employees like him were required to complete a pre-trip inspection form, and if they perceived any safety issues, they were required to inform the mechanic immediately. (*See* Plf. Resp. ¶25; Randazzo Decl., Ex. F at 76-78.)[1] At the time of the Defendants' alleged unlawful conduct, Plaintiff was 32 years old. (*See* Plf. Resp. ¶1; Am. Compl. ¶5.)

In January of 2015, following an incident between Plaintiff and Defendant Bruen, Plaintiff was suspended without pay, pending charges pursuant to Civil Service Law § 75. (*See* Plf. Resp. ¶¶30-42.) Disciplinary charges were issued on February 4, 2015 and a disciplinary hearing presided over by William Wallens (the "Hearing Officer") followed (the "Section 75 Hearing"). (*Id.* ¶¶51-55.) Following the Section 75 Hearing, the Town Board voted to terminate Plaintiff. (*Id.* ¶68.)

Defendant Hay is the Supervisor of the Town and was in that position during the time relevant to Plaintiff's Amended Complaint. (*See* Plf. Resp. ¶4.) Defendant Bruen serves as the Highway Superintendent for the Town and has been in that position since approximately

---

[1] Plaintiff's attempts to dispute these facts are unavailing. The testimony cited by Defendants in support thereof, including that of Plaintiff at his hearing pursuant to N.Y. Gen. Mun. Law § 50-h, do in fact indicate that equipment operators were required to inspect the vehicles and equipment before use, prepare pre-trip inspection forms, and inform the mechanic of any safety issues immediately. (*See* Randazzo Decl., Ex. C at 50-54; Ex. F at 76-78.)

November 18, 2013.  (*Id.* ¶6; Am. Compl. ¶32; Randazzo Decl., Ex. F at 38.)  Plaintiff contends that after Bruen became the Highway Superintendent, he began to engage in a course of conduct which constituted harassment, discrimination, retaliation, and a hostile work environment, with the alleged acquiescence and approval of Hay.  (*See* Am. Compl. ¶32.)

In July of 2012, over a year before Bruen became Highway Superintendent, Plaintiff entered into a stipulation of settlement with the Town whereby he agreed to a disciplinary suspension of five days without pay in resolution of three allegations of misconduct.[2]  (*See* Plf. Resp. ¶8; *see* Randazzo Decl., Ex. N at Town Ex. 11.)  In September of that year, Plaintiff applied to the position of Assistant Mechanic, but he was not chosen and the position was not filled.  (*See* Plf. Resp. ¶10.)  The position was offered again in December of 2013 and Plaintiff applied, but again was not chosen for the position.  (*Id.* ¶¶12-13.)  In April of 2014, Plaintiff applied to the position of Construction Equipment Operator, but Bruen hired another individual to fill the position that December.  (*Id.* ¶¶14-15.)  The individuals chosen for each position were older than Plaintiff.  (*Id.* ¶¶16.)

In 2014, Plaintiff received five Letters of Counseling and/or Reprimand.  (*See* Plf. Resp. ¶¶18-24.)  In March and April, he received Letters of Reprimand for insubordination.  (*Id.* ¶¶18-19.)[3]  In May, Plaintiff received a Letter of Counseling for insubordination and was advised that further acts of insubordination would result in disciplinary action.  (*Id.* ¶20.)  In June, Plaintiff received a second Letter of Counseling for missing work without prior approval for two days in

---

[2] The allegations of misconduct included: (1) the harassment of Michael Burdick on May 17, 2012; (2) intentionally blowing "dirt, dust and material into Michael Burdick's office" while operating a blower; and (3) using a cellphone while operating a Town vehicle and operating that vehicle recklessly, ultimately colliding with another vehicle, causing property damage.  (*See* Randazzo Decl., Ex. N at Town Ex. 11.)
[3] The Hearing Officer dismissed the charges pertaining to these Letters of Reprimand.  (*See* Randazzo Decl., Ex. O at 48-50.)

May.  (*Id.* ¶¶21-24.)[4]  This Letter of Counseling also contained an advisement that further similar conduct would lead to disciplinary action.  (*Id.* ¶24.)

In the summer of 2014, Plaintiff was instructed to operate a 10-wheeler truck.  (*Id.* ¶27.) The operation of such a truck was within Plaintiff's job description.  (*Id.* ¶26.)  After performing an inspection on the truck, Plaintiff complained to the mechanic on the job, Michael Burdick, that he would not drive the truck because it had bald tires.[5]  (*See* Plf. Resp. ¶27; Randazzo Decl., C at 49-50; Ex. D at 211-215.)

On January 9, 2015, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") which was dually filed with the United States Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia*, that he was discriminated against on the basis of his age when he was denied the promotions in December 2013 and April of 2014.  (*See* Plf. Resp. ¶¶28-29.)  Thereafter, Bruen asked Plaintiff if he had filed the complaint, if he was "aware of what it was doing to the morale" of the department, and said that the complaint was "bringing down everything [Bruen] felt [they] had accomplished" in the department.  (*See* Defs. Cntr. ¶¶84-85.)  Plaintiff also contends that, at some unidentified time, Bruen referred to him as "a young mistaken boy."  (*Id.* ¶91.)[6]  Plaintiff amended his discrimination charge on June 30, 2015 to include retaliation, discrimination, and a hostile work environment.  (*See* Plf. Resp. ¶58.)  By determination and order dated July 1, 2015, following an investigation, the NYSDHR held there was no probable cause to believe that Defendants engaged in the alleged discriminatory practices. (*Id.* ¶59.)  The EEOC adopted the findings of the NYSDHR on August 19, 2015, dismissed

---

[4] Plaintiff cannot maintain that he did not commit any wrongdoing in this regard, (*see* Plf. Resp. ¶24), as the Hearing Officer found Plaintiff guilty of the charge related to this Letter of Counseling.  (*See* Randazzo Decl., Ex. O at 51-53.) As described in further detail below, *infra* I, the findings of fact made by the Section 75 Hearing Officer are entitled to preclusive effect. *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 45 (2d Cir. 2014).

[5] "Bald tires" refers to tires that are overly worn and should be changed.  (*See* Randazzo Decl., Ex. C at 49-50; Ex. D at 211-215.)

[6] Defendants dispute that such a comment was ever made.  (*See* Defs. Cntr. ¶91.)

Plaintiff's complaint, and issued a notice of right to sue. (*Id.* ¶60.)

On January 15, 2015, Plaintiff removed firewood from the Highway Department for his personal use without permission. (*See* Plf. Resp. ¶¶30, 66; Randazzo Decl., Ex. O at 60-61.)[7] The following day at a morning meeting, Bruen reminded the employees that department policy required them to receive permission before removing any materials from the department. (*See* Plf. Resp. ¶31.) Following the reminder, Plaintiff glared at Bruen threateningly, became irate, and started swearing in the lunchroom in the presence of the other employees. (*See* Randazzo Decl., Ex. O at 62.) At the conclusion of the meeting, Bruen asked to speak to Plaintiff in his office. (*See* Plf. Resp. ¶34; Randazzo Decl., Ex. O at 62.) Plaintiff did not respond and proceeded out of the building; Bruen followed. (*See* Randazzo Decl., Ex. O at 62.) Bruen again told Plaintiff he wanted to see him and his shop steward in his office immediately, and Plaintiff responded that he "would have the meeting right then and there" in the shop. (*Id.*) Bruen again informed Plaintiff that the meeting would occur in his office. (*Id.*) As the two were walking toward Bruen's office, Plaintiff behind Bruen, Plaintiff reiterated that he wanted to have the meeting in the shop, causing Bruen to turn around. (*Id.*) Plaintiff continued walking toward Bruen and bumped into him, making physical contact. (*Id.*) Bruen then asked Plaintiff if he was trying to walk through him and Plaintiff responded, "whatever it takes." (*Id.*) During the meeting in Bruen's office, Plaintiff used foul and abusive language and spoke in an inappropriate manner. (*Id.*)[8] Following the incident, Plaintiff went home. (*See* Plf. Resp. ¶41.)

On January 22, 2015, Plaintiff was suspended without pay pending forthcoming

---

[7] Plaintiff's attempt to dispute the fact that he needed prior permission to take firewood from the Highway Department is unavailing. The Hearing Officer's factual finding to the contrary is afforded preclusive effect.

[8] To the extent Plaintiff disputes any of the facts pertaining to this incident, including, *inter alia*, that he did not swear in the lunchroom, leave the building without responding to Bruen, or made physical contact with Bruen, (*see* Plf. Resp. ¶¶30-42), such attempts fall flat. As previously indicated, and more thoroughly described below, *infra* I, this Court grants preclusive effect to the findings of fact made during the Section 75 Hearing.

disciplinary charges. (*Id.* ¶42.) The same day, Bruen gave a sworn statement to the Putnam County Sheriff's Department regarding the incident on January 16, 2015. (*Id.* ¶44.) As a result, Plaintiff was served with a criminal summons for harassment in the second degree, dated February 3, 2015. (*Id.* ¶47.) Plaintiff was not arrested, but did have to appear in court on two occasions. (*Id.* ¶¶48-49.) Plaintiff did not have to post bail and no travel restrictions were imposed on him. (*Id.* ¶50.) The criminal summons against Plaintiff was ultimately dismissed. (*Id.* ¶71.)

On February 4, 2015, Plaintiff was served with the Section 75 disciplinary charges. (*Id.* ¶51.) Twelve charges, including, *inter alia*, insubordination, absence without leave, and dereliction of duty were asserted. (*See* Randazzo Decl., Ex. L.) The Section 75 Hearing was held on February 27, 2015, March 9, 2015, and August 20, 2015 to assess whether the charges were meritorious and warranted termination. (*Id.* ¶54-56.) Plaintiff was present at the hearing, represented by counsel, and provided the opportunity to enter evidence, cross examine the Town's witnesses, offer testimony of his own witnesses, and testify on his own behalf. (*Id.* ¶¶56-57; Randazzo Decl., Ex. M, Ex. O at 1-2, 44-46.) The Hearing Officer issued a report and recommendation regarding the charges on December 8, 2015. (*See* Randazzo Decl., Ex. O at 65.) The Hearing Officer found Plaintiff guilty on charges 4, 5, 6, 8, 11, and 12, dismissed the others, and recommended termination. (*See* Plf. Resp. ¶61; Defs. Cntr. ¶87; Randazzo Decl., Ex. O at 48-64.) On December 11, 2015, the Town Board voted to accept and adopt the Hearing Officer's report and recommendation and terminated Plaintiff's employment. (*See* Plf. Resp. ¶68.)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including

depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).

**DISCUSSION**[9]

## II.    <u>Preclusive Effect of Section 75 Hearing Findings</u>

It is well settled that "federal courts must give state-court judgments the same preclusive effect as they would receive in courts of the same states." *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005).   Though administrative agency and arbitration decisions are not traditionally considered state-court judgments for purposes of the Full Faith and Credit Act, "New York courts give quasi-judicial fact-finding preclusive effect where there has been a full and fair opportunity to litigate," *id.*   "This rule applies to findings made by administrative officers after conducting section 75 hearings" *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 45 (2d Cir. 2014); thus, the factual findings rendered therein are given preclusive effect provided the parties had a full and fair opportunity to litigate, *see Burkybile*, 411 F.3d 312 (quoting *Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986)).

Plaintiff rightly contends that the fact that the Hearing Officer recommended that Plaintiff be terminated based on the disciplinary charges does not preclude this court from finding that he was terminated in retaliation for opposing unlawful discrimination.   *See Burkybile*, 411 F.3d at 312; *see also Garcia v. Yonkers Bd. of Ed.*, 188 F. Supp. 3d 353, 362-63 (holding that Plaintiff's retaliation claim was not precluded based on the 3020-a Hearing).   Nevertheless, this Court may give preclusive effect to the factual findings of the Section 75 Hearing Officer, insofar as such findings preclude Plaintiff from arguing facts to the contrary.   *See Matusick*, 757 F.3d at 49 (affording preclusive effect to factual findings of hearing officer); *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 471(S.D.N.Y. 2011) ("Plaintiff is estopped from challenging any

---

[9] Defendants also seek dismissal of any substantive ADEA claim, as Plaintiff is not within the protected age group. (*See* Defs. Br. at 5.)   The Court need not address the merits of this argument, as Plaintiff confirms that he is not pursuing such a claim.   (*See* Plf. Br. at 4.)

of the factual findings made during [the 3020-a] proceeding."). Plaintiff does not contend that he was deprived a full and fair opportunity to litigate before the Hearing Officer and the record does not indicate as much: Plaintiff was represented by counsel, permitted to and did cross examine witnesses, and was permitted to and did enter into the record evidence and testimony of his own witnesses. (*See* Randazzo Decl., Ex. O at 1-4.)

Consequently, Plaintiff's disputes of the following findings of fact by the Hearing Officer, *inter alia*, are untenable: (1) Plaintiff needed Bruen's permission, but did not obtain it, prior to taking firewood from the Highway Department; (2) Plaintiff did not receive approval before being absent from work for two days in May of 2014; and (3) he made physical contact with Bruen on January 16, 2015.

## III.   **ADEA Retaliation**

Defendants seek summary judgment on Plaintiff's ADEA retaliation claim arguing that Plaintiff cannot meet the protected activity prong because he could not have had a reasonable belief that the ADEA was being violated. (*See* Defs. Br. at 5-6.) Plaintiff contends that a retaliation claim is asserted "without regard to whether the allegations are valid or reasonable." (*See* Plf. Br. at 4.)[10] This Court disagrees.

---

[10] To the extent that Plaintiff cites *Deravin v. Kerik*, 335 F.3d 195 (2d Cir. 2003), for the proposition that "the participation clause of Title VII is 'expansive and seemingly contains no limits,'" (*see* Plf Br. at 4), to argue that he has met the protected activity prong, this Court is unpersuaded. Plaintiff's citation refers to a discussion in *Deravin* to the manner in which an individual can engage in protected activity, *i.e.* by informal or formal complaint, vocal opposition, initiation of certain proceedings, etc. *See Deravin*, 335 F.3d at 203-04. That is not the precise issue raised by Defendants. Moreover, Plaintiff cites *Deravin* for the proposition that "good faith" is not required and retaliation can stand regardless of whether "the allegations are valid or reasonable." (*See* Plf. Br. at 4.) To the contrary, though the underlying discrimination claim need not be successful, a plaintiff alleging a stand-alone retaliation claim under the ADEA, much like that of the ADA or Title VII, *must* have had a good faith, reasonable belief that the substantive statute was being violated. *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (Plaintiff must "have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII [or the ADEA].")

Under the ADEA, it is unlawful for an employer to retaliate against an employee for complaining of age discrimination in the workplace. *See* 29 U.S.C. § 623(d). Analysis of an ADEA retaliation claim, like Title VII, is subject to the *McDonnell Douglas* burden shifting standard. *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). A prima facie showing of ADEA retaliation requires a plaintiff to demonstrate that: "(1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (citing *Kessler*, 461 F.3d at 205-06).

To properly assert a retaliation claim, a Plaintiff need not prove successful on the underlying substantive ADEA discrimination claim. *See Kessler*, 461 F.3d at 210. Instead, plaintiff must "have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by . . . the ADEA." *Id.* (quoting *McMenemy v. City of Rochester*, 241 F.3d 279 (2d Cir. 2001)); *Vernon v. Port Auth. of N.Y. and N.J.*, 154 F. Supp. 2d 844, 858-59 (S.D.N.Y. 2001) (quoting *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564 (2d Cir. 1989) for proposition that plaintiff need not prove "actual violation of the act, but only that he was under a 'good faith, reasonable belief' that such a violation existed"). A court must view the totality of the circumstances to make such a determination. *See Galdieri-Ambrosino v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

Plaintiff's argument that he had such a reasonable belief by virtue of the fact that he filed a complaint with the NYSDHR which was dual filed with the EEOC, (*see* Plf. Br. at 5), is a red-herring. The fact that the NYSDHR forwarded the complaint to the EEOC has no bearing on Plaintiff's reasonable belief. The issue before the Court is whether a 32 year old in Plaintiff's

position, viewing the totality of the circumstances, would have had a reasonable belief that he was being discriminated against on the basis of his age.

A genuine belief that he had a claim for age discrimination is not the same as a good faith, reasonable belief. *See Galdieri-Ambrosini*, 136 F.3d at 292 (though plaintiff "genuinely believed herself to be the victim of [gender] discrimination. . . ." there "was no basis for a rational finding that [her] belief . . . was reasonable"); *Kelly v. Howard I. Shapiro & Assocs. Cosulting Eng'rs, P.C.*, 716 F.3d 10, 16 ("mere subjective good faith belief is insufficient") (internal alterations omitted). In *Galdieri-Ambrosini*, plaintiff argued that she was retaliated against for complaining of gender discrimination, but the Court found "no semblance of gender-oriented motivation in the events or conversations to which Ambrosini testified." *Id.* Similarly, this Court finds that, while Plaintiff may have had a genuine belief that he was being discriminated against on the basis of his age, as he was the youngest employee, such belief was not reasonable.

The ADEA explicitly states that protection thereunder is "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a). Plaintiff, a 32 year old, could not have had a reasonable belief that the ADEA was being violated, or was even applicable to him. A finding to the contrary would require this Court to "endorse" Plaintiff's belief that "the law of [the ADEA] is something other than what it is . . . ." *Kelly*, 716 F.3d at 17 (no reasonable belief where plaintiff alleged Title VII gender discrimination where another female was given preferential treatment over her).

Additionally, Plaintiff alleges his problems began after he complained of what he perceived to be an unsafe and dangerous condition, (Am. Compl. ¶35), but fails to allege how that incident, or any of the following, pertained to his age. Moreover, the crux of Plaintiff's beliefs that he was discriminated against on the basis of age appear to rest on the following facts: (1) the two

promotions he applied to (in December 2012 and April 2014) were given to older employees;[11] (2) Bruen allegedly called him a "young mistaken boy"; and (3) that he was the "youngest employee of the Town's Highway Department in November 2013." (*See* Randazzo Decl., Ex. C at 47-48; *see* Defs. Cntr. ¶¶92[12], 77.) Plaintiff's case paints Bruen as the driving force behind the discrimination. (*See* Am. Compl. ¶¶32-33.) Considering that theory in light of the remainder of the evidence, it would strain credulity to hold that Plaintiff had a reasonable belief that the ADEA was being violated. Plaintiff's claim that he was denied two promotions because of Bruen's discriminatory behavior is untenable. The one in December of 2013 was also offered before Bruen was Superintendent and not given to Plaintiff. Additionally, the mere assertion that he was denied the April 2014 promotion because of his age, particularly where others applied to the position (one of whom was his age, (*see* Plf. Cntr. ¶76)), is insufficient. What remains is Plaintiff's contention that Bruen called him a "young mistaken boy"; even assuming Bruen did make such a comment, "one comment . . . is insufficient to establish a prima facie claim of age discrimination", *Burroughs v. Chase Manhattan Bank, N.A.*, No. 01-CV-1929 (BSJ), 2005 WL 497790, at *2 (S.D.N.Y. Mar. 2, 2005); *see also Saqib v. Stein deVisser & Mintz, P.C.*, No. 09-CV-4624, 2010 WL 2382253, at *1 (2d Cir. 2010) (summary order); *Patrick v. Deutsch*, No. 92-CV-0072 (DRH), 1992 WL 368080, at *2 (E.D.N.Y. Oct. 28, 1992) ("one incident that has a facial relationship to age" insufficient), and is therefore insufficient to demonstrate that Plaintiff had a reasonable belief that he was being discriminated against.

Defendants are entitled to summary judgment on the ADEA retaliation claim.

---

[11] The position offered in December of 2013 was also offered a year earlier in September 2012. (*See* Plf. Resp. ¶10.) Plaintiff applied to the position at that time and was not offered the promotion then either. (*Id.*) Bruen was not Highway Superintendent at the time. (*Id.* ¶11.)

[12] Defendants dispute that Bruen ever made such a statement to Plaintiff. (*See* Defs. Cntr. ¶92.) The Court need not deny summary judgment on this ground, because, even assuming Bruen did call Plaintiff a "young mistaken boy", it is insufficient to convince this Court that Plaintiff had a reasonable belief that he was being targeted for his age.

## IV.    **First Amendment Retaliation**

Defendants also seek summary judgment on the Plaintiff's First Amendment retaliation claim on the basis that Plaintiff did not speak on a matter of public concern and only discussed issues personal in nature.  (*See* Defs. Br. at 7-8.)  Plaintiff's Opposition argues to the contrary. (*See* Plf. Br. at 9-10.)  Plaintiff fails to raise a triable issue of fact.

Defendants have demonstrated their entitlement to summary judgment.  The First Amendment "affords a degree of protection to public employees to exercise the right of free speech without risk of retaliation by the State employer if the employee's speech in question is 'on matters of public interest.'"  *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016) (quoting *Lynch v. Ackley*, 811 F.3d 569 (2d Cir. 2016) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968))). Nevertheless, the Supreme Court has carved out three exceptions: (1) "speech about *personal* matters, as opposed to 'matters of public concern,' is not protected from retaliation," *id.* at 168 (quoting *Connick v. Myers*, 461 U.S. 138 (1983)); (2) "even speech on matters of public concern is not protected from retaliation unless the employee's First Amendment interests outweigh the government employers' legitimate interests in efficient administration", *id.* (quoting *Pickering*, 391 U.S. at 568); and (3) "speech made by employees 'pursuant to . . . official duties' rather than 'as a private citizen' . . ." is not protected, *id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410 (2006)).

Relevant to the inquiry here are the first and third circumstances under which the First Amendment does not protect a public employee's speech. [13]

First, Defendants have demonstrated that the objections Plaintiff made regarding the "bald tires" were not made as a public citizen, but rather in furtherance of his official job duties.  (*See*

---

[13] Defendants construe Plaintiff's First Amendment claim as concerning three incidents of alleged protected speech: (1) his complaints about the bald tires; (2) filing grievances with his union; and (3) filing a complaint with the NYSDHR.  (*See* Defs. Br. at 7.)  The First Amendment claim as alleged in the Amended Complaint, however, appears to only concern the complaints regarding his concerns that the bald tires were dangerous.  (*See* Am. Compl. 117-27.)

Defs. Br. at 8.) To be protected, a public employee's speech must be made as a private citizen "and not in her role as employee" or "pursuant to official duties." *Nagle v. Marron*, 663 F.3d 100, 106 (2d Cir. 2011). Accordingly, speech that is "required by, or included in, [his] job description," or is "part-and-parcel of his concerns' about his ability to 'properly execute his duties" is not protected. *Id.* at 106-07 (quoting *Weintraub v. Bd. of Educ.*, 593 F.3d 196 (2d Cir. 2010)). Plaintiff merely argues that "it is submitted that plaintiff spoke as a private citizen." (*Id.* 10.) This is the classic example of a "statement devoid of any specifics, but replete with conclusions", that the Second Circuit has found insufficient to defeat summary judgment. *Bickerstaff*, 196 F.3d at 452. Plaintiff completely fails to demonstrate what genuine issues of fact exist that would lead a reasonable juror to find in his favor on this issue or otherwise argue how his statements were made by him as a private citizen as opposed to in his capacity as a Town employee.

Indeed, the record demonstrates that there are no issues of fact. The facts are as follows: Plaintiff was required to operate the 10-wheeler, (*see* Plf. Resp. ¶26), inspect the vehicle, and fill out a "pre-trip inspection" form before he used it, (*see* Plf. Resp. ¶25[14]; Randazzo Decl., Ex. C at 54), and Plaintiff inspected the truck before using it then complained that the tires were "bald" and

---

Plaintiff's Opposition fails to articulate what speech he is claiming is protected by the First Amendment. (*See* Plf. Br. at 8-10.) The Court concludes that, based on the Amended Complaint, Plaintiff's purported protected speech pertained to the complaints about the bald tires only. Nevertheless, it will also briefly address the remaining instances of alleged speech.

[14] Plaintiff's contention that he disputes "that the cited references stand for the fact asserted" in paragraph 25 of Defendants' 56.1 fails to raise a material issue of fact, and is plainly incorrect. Plaintiff explicitly testified in his hearing pursuant to N.Y. Gen. Mun. L. § 50-h that prior to using the vehicle, the employees "were supposed to" submit a pre-trip inspection form "every day", (*see* Randazzo Decl., Ex. C at 54), and Bruen testified that operators were required to perform a safety inspection and report any issues to the mechanics before operating the vehicles, (*see* Randazzo Decl., Ex. F at 76-78.) Consequently, the evidence does support Defendants' contention that Plaintiff "was required to inspect any Town vehicles that he would be using." (*See* Def. 56.1 ¶25.) A flat assertion that they do not does not raise a triable issue of fact. Plaintiff cannot fabricate issues of fact to defeat summary judgment.

should be changed, (at 49-50.) Consequently, the speech pertained to his official duties and is not protected.

Second, Defendants sufficiently demonstrate that Plaintiff's filing of his grievances to the union and the complaint of age discrimination to the NYSDHR do not address matters of public concern and are instead overwhelming personal in nature. (*Id.* at 8-9.) "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide . . . ." *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008). Speech touches on a matter of public concern, if it "relat[es] to any matter of political, social, or other concern to the community." *Singer v. Ferro*, 711 F.3d 334, 339 (2d Cir. 2013) (quoting *Connick*, 461 U.S. at 146). To make this assessment, courts look at "the content, form, and context of a given statement, as revealed by the whole record," *id.* (quoting *Connick*, 461 U.S. at 147-48).

Plaintiff fails entirely to persuade this Court that his speech is protected. Plaintiff's Opposition contains two and a half pages of case law articulating the legal standard, and simply states that:

> defendants would have us believe that plaintiff's speech was calculated to redress personal issues and was, thus, not a matter of public concern. This assertion is not true. At any rate, sufficient questions of fact exist.

(*See* Plf. Br. at 10.) Plaintiff points to no facts that would demonstrate how his speech addressed a matter of public concern or identify the issues of facts that allegedly exist and how such facts should persuade this Court to find in his favor. *See Vasquez v. United States*, No. 14-CV-1510 (DF), 2016 WL 315879, at *3 (S.D.N.Y. Jan. 15, 2016) (citing Fed. R. Civ. P 56(c) for proposition that "the non-moving party must cite to 'particular parts of materials in the record' or show 'that

the materials cited [by the movant] do not establish the absence . . . of a genuine dispute' as to any material fact").

As a matter of law, the filing of grievances with the union and a complaint with the NYSHRD, constitutes speech personal in nature.  Plaintiff's complaint to the NYSHDR alleged discrimination and retaliation against him personally on the basis of his age but contained no overarching issues of public concern.  (*See* Plf. Resp. ¶¶28-29.)  *See also Ruotolo*, 514 F.3d at 190 (finding plaintiff's complaints regarding unfair and improper treatment that sought relief "for himself alone" was "not speech on a matter of public concern").  Likewise, his grievances to the union were merely personal in nature insofar as they took issue with the Letters of Reprimand and/or Counseling he received.  (*See* Randazzo Decl., Ex. D at 115.)  Defendants are entitled to summary judgment on Plaintiff's First Amended claim of retaliation.

## V.    <u>Fourteenth Amendment Due Process</u>

Defendants also seek summary judgment on Plaintiff's alleged procedural and substantive due process claims.  (*See* Defs. Br. at 10-11.)

Plaintiff's Opposition contains no arguments regarding his claim for procedural due process whatsoever.  (*See* Plf. Br. at 11.)  To the extent Plaintiff alleged a procedural due process claim in his Amended Complaint, the Court deems it abandoned.  It is therefore dismissed.  *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (quoting *Jackson v. Federal Express*, 766 F.3d 189, (2d Cir. 2014) for proposition that a "'partial response [to a summary judgment motion generally] reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others,' and 'a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned'").

As to the substantive due process claims, Plaintiff "recognizes the validity of the cases cited by defendants in asserting that the plaintiff's substantive due process claims must be analyzed under other Amendments," but nevertheless argues that a proper substantive due process claim has been asserted. (*See* Plf. Br. at 11.) This Court disagrees. "[W]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (citing *Kia P. v. McIntyre*, 235 F.3d 749 (2d Cir. 2000)).

Here, Plaintiff concedes that his claims should be analyzed under other Amendments, thus precluding a substantive due process claim regarding the same conduct, but then badly argues that "Plaintiff has, in his Response to Defendants' Rule 56.1 Statement, identified the constitutional rights at issue herein and that the actions of the defendants that were arbitrary and improper." (*See* Plf. Br. at 11.) Such an argument fails to identify any actions of defendants that violated Plaintiff's rights to substantive due process not already covered by claims under other Amendments. Moreover, a review of the record reveals that all of the alleged improper conduct by Defendants is subsumed by other Amendments. Plaintiff's substantive due process claim fails as well.

Defendants' Motion seeking summary judgment on the procedural and substantive due process claims is granted.

## VI.    Fourteenth Amendment – Equal Protection

The Equal Protection Clause holds that "[n]o State shall . . . deny to any person within this jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, § 1 and "is essentially a direction that all persons similarly situated should be treated alike," *Brown v. City of Oneaonta*, 221 F.3d 329, 337 (2d Cir. 2000) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)) (internal quotation marks omitted). To succeed, "plaintiff must demonstrate that

he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (*citing Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995)).

There are three types of equal protection claims: (1) selective enforcement; (2) discriminatory intent; and (3) class of one. Both selective enforcement and discriminatory intent require a demonstration that "the conduct [be] based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitution rights, or malicious or bad faith intent to injure a person." *Le Clair v. Saunders*, 627 F.2d 606, 609-10 (1980). The class of one theory permits a plaintiff, not in a protected class, to state a cognizable claim if she establishes that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Analytical Diag. Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010); *Holmes v. Haugen*, 356 F. App'x 507, 509 (2d Cir. 2009) (summary order) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

As a matter of law, an Equal Protection claim asserted on the basis of a class-of-one theory is inapplicable to public employees. *See Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008) (citing *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008)). As Plaintiff does not allege that he is in a protected class, but instead bases his equal protection claim on a theory that Defendants did not treat him "rationally or adequately related to a legitimate state interest", (*see* Plf. Br. at 12), as compared to other employees, his claim rests on a class-of-one theory and cannot stand, *see Miller v. N.Y.C. Dep't of Educ.*, 622 F. App'x 38, 39 (2d Cir. 2015) (summary order) (no equal protection claim where plaintiff alleged he was "unfairly 'singled out' for discipline that was not visited on other teachers who were similarly situated"). Plaintiff has failed to persuade this Court to the contrary. Defendants are entitled to summary judgments on the Equal Protection claim.

## VII.    Fourth Amendment - Malicious Prosecution

Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claim because, as a matter of law, he cannot demonstrate a liberty interest.

A malicious prosecution claim pursuant to Section 1983 is largely indistinguishable from a state law claim.  In New York, a claim for malicious prosecution lies if plaintiff demonstrates four elements: (1) "the defendant initiated a criminal proceeding"; (2) the proceeding was terminated in plaintiff's favor; (3) "there was no probable cause for the criminal charge"; and (4) defendant acted maliciously.  *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004).  A federal claim for malicious prosecution must also "show a violation of his rights under the Fourth Amendment" – to wit, an unreasonable seizure.  *See Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997).  Post-arraignment detainment, including the requirement to attend court appearances, clearly demonstrates a seizure for purposes of the Fourth Amendment.  *Id.*  The Second Circuit has definitively held, however, that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure."  *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010).[15]

---

[15] Plaintiff's counsel completely ignores this binding Second Circuit precedent, despite an obligation to advise the Court of unfavorable binding precedent.  Instead, Plaintiff relies on cases from 1997 and 1998 to support his arguments and cherry picks favorable portions of those decisions to make a disingenuous argument, thereby disregarding the propositions for which those cases stand.  *Sassower* and *Wilmer* relied on *Murphy* for the proposition that *post-arraignment* court appearances, alone, are sufficient for a Fourth Amendment liberty violation.  *See Sassower v. City of White Plains*, 992 F.Supp. 652, 656 (S.D.N.Y. 1998); *Wilmer v. Town of North Hempstead*, 977 F.Supp. 182, 189 (E.D.N.Y. 1997).  Though neither case explicitly stated that its holding pertained only to post-arraignment court appearances, both discussed *Murphy* at length and indeed were merely interpreting *Murphy* (which pertained only to post-arraignment seizures) to ascertain its true holding.  *Sassower*, 992 F.Supp. at 656; *Wilmer*, 977 F.Supp. at 188-190.  It is apparent that Plaintiff's counsel did not read *Murphy* before drafting the Opposition.  Had he done so, it would have been apparent that *Murphy* discussed only post-arraignment deprivations, thereby rendering *Sassower* and *Wilmer* inapplicable to this case.  Moreover, as indicated above, much more recent Second Circuit precedent has explicitly held that, like here, a court appearance attendant to a pre-arraignment non-felony summons does not raise a liberty deprivation under the Fourth Amendment.  Either Plaintiff's counsel did not discover *Burg* while drafting the Opposition, or he did and chose to ignore it.  Either way, it seems clear that *Burg* precludes the reasonable assertion of a malicious prosecution claim under the circumstances.

The undisputed facts demonstrate that Plaintiff was issued a summons for harassment in the second degree. (*See* Plf. Resp. ¶47.) Harassment in the second degree is a violation and therefore not a crime; certainly not a felony. N.Y. Penal Law § 240.26. Consequently, despite the fact that Plaintiff had to attend two court appearances attendant to the issuance of this summons, (*see* Plf. Br. at 49), he has not suffered a deprivation of liberty. [16] As a matter of law, he cannot pursue a federal malicious prosecution claim.

## VIII.   <u>State Law Claims</u>

In light of this Court's decision to grant judgment in Defendants' favor on each of Plaintiff's federal claims, it does not assess the merits of the state law claims and declines to exercise supplemental jurisdiction over them. *Schaefer v. Town of Victor*, 457 F.3d 188, 210 (2d Cir. 2006); *Rocco v. N.Y.S. Teamsters Conference Pension and Ret. Fund*, 281 F.3d 62, 72 (2d Cir. 2002) (noting that district court need not exercise supplemental jurisdiction over state claims where it dismissed federal claims). To the extent Plaintiff can properly plead such claims, he is free to do so in state court.

---

[16] Though the Second Circuit held that the "number of appearances may bear upon whether there was a seizure", leaving open the possibility that multiple court appearances, even in the pre-arraignment, non-felony summons circumstances can give rise to a liberty deprivation, *Burg*, 591 F.3d at 98, it is hardly conceivable that while one court appearance in such a situation does not implicate the Fourth Amendment, the addition of a second would, *id.* ("[I]t is hard to see how multiple appearances required by a court, or for the convenience of the person answering the summons, can be attributed to the conduct of the officer who issues it."); *see also Faruki v. City of New York*, 517 F. App'x 1, 1 (2d Cir. 2013) (summary order) (two court appearances attendant to pre-arraignment non-felony summons insufficient).

**CONCLUSION**

For the foregoing reasons, Defendants' Motion is GRANTED and Plaintiff's complaint is dismissed with prejudice. The Clerk of the Court is respectfully requested to enter judgment in Defendants' favor. The Clerk of the Court is further respectfully requested to terminate the motion at ECF No. 35 and terminate the action.

Dated:    September 17, 2018
          White Plains, New York

SO ORDERED:

_____
NELSON S. ROMAN
United States District Judge